EL PUEBLO, DEMANDANTE Y APELADO, *v.* BRACERO, ACUSADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en causa por infracción al artículo 287 del Código Penal.

No. 1332.—Resuelto en marzo 7, 1919.

DELITOS CONTRA LA HONESTIDAD PÚBLICA—ALEGACIONES—CASA DE LENOCINIO—DENUNCIA INSUFICIENTE.—Una denuncia en la cual no se exprese que la

casa de lenocinio establecida por el acusado es frecuentada para la prosti-
tución o lascivia, es fatalmente defectuosa, porque no imputa, conforme al
artículo 287 del Código Penal, el hecho delictivo en toda su extensión.

DELITOS CONTRA LA HONESTIDAD PÚBLICA—LENOCINIO—RESIDENCIA VOLUNTARIA
EN CASA DE LENOCINIO.—El artículo 287 del Código Penal prevé dos me-
dios de cometer el delito penado por el mismo, a saber: (1) estableciendo
una casa de lenocinio, frecuentada para la prostitución y lascivia; y (2)
residiendo voluntariamente en ella. Examinada la denuncia en este caso, *se
resolvió:* que no imputaba dicho delito bajo ninguna de sus formas.

DELITOS CONTRA LA HONESTIDAD PÚBLICA—CASA DE LENOCINIO—SU CONCEPTO LE-
GAL.—Para que el lugar constituya una casa de lenocinio, debe ser frecuen-
tada más de una vez para el propósito de la prostitución y lascivia por otros
que no sean el propietario, aunque no se necesita que sea usado habitual-
mente o por un período considerable de tiempo para tal propósito. Un
número de actos ilícitos con el propietario no convertirá, por sí sólo, el lugar
en una casa de lenocinio.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. Angel A. Vázquez.*

Abogado del apelado: *Sr. S. Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tri-
bunal.

Josefa Bracero fué acusada de violar el artículo 287 del
Código Penal. La denuncia le imputa la comisión del si-
guiente hecho: En Mayagüez, en los meses de julio y agosto
de 1918, "ilegal, maliciosa y voluntariamente tenía estable-
cida una casa de lenocinio, en donde dicha acusada ejercía o
practicaba con su cuerpo actos carnales de prostitución y las-
civia."

En la corte de distrito, al leerse la denuncia a la acu-
sada, ésta, por medio de su abogado, alegó que no aducía
hechos suficientes para constituir materia delictiva.

La corte oyó los argumentos orales de los abogados de
ambas partes y desestimó la excepción. Luego se celebró la
vista y, oída la evidencia, la corte declaró culpable a la acu-
sada del delito previsto en el artículo 287 del Código Penal,
y la condenó a sufrir un año de cárcel. La acusada apeló,
quedando en libertad bajo fianza.

La transcripción que se ha elevado a esta Corte Suprema
no contiene la prueba practicada. Nuestra misión está limi-
tada, pues, a considerar y a resolver si los hechos que se

imputan a Josefa Bracero constituyen o no el delito especificado en el artículo 287 del Código Penal.

Dicho precepto legal es como sigue:

"Artículo 287.—Toda persona que estableciere o tuviere establecida en Puerto Rico una casa de lenocinio, frecuentada para la prostitución y lascivia, o que voluntariamente residiere en ella, será reo de *misdemeanor.*"

El texto inglés dice:

"*Every person who keeps a house of ill fame in Porto Rico, resorted to for the purpose of prostitution, or lewdness, or who wilfully resides in such house, is guilty of a misdemeanor.*"

De acuerdo con la ley, existen, pues, dos medios de cometer el delito a que se refiere el artículo 287, a saber: 1°., estableciendo una casa de lenocinio, frecuentada para la prostitución y lascivia, y 2°., residiendo voluntariamente en dicha casa.

¿Cuál de dichos dos medios se imputa a la acusada? Directamente se alega en la denuncia que "tenía establecida una casa de lenocinio." Pero la acusada sostiene que esto no es bastante, sino que debió consignarse en la denuncia que dicha casa era "frecuentada para la prostitución y lascivia."

¿Qué efecto pueden tener las últimas palabras de la denuncia, esto es, "en donde dicha acusada ejercía o practicaba con su cuerpo actos carnales de prostitución y lascivia? ¿Se imputa por ellas a la acusada la comisión del delito en la segunda de sus formas, esto es, la residencia voluntaria en una casa de lenocinio, frecuentada para la prostitución y lascivia, o puede considerarse que suplen la omisión de las palabras del estatuto "frecuentada para la prostitución y lascivia?"

Examinemos la jurisprudencia a los efectos de contestar debidamente las anteriores preguntas.

"Una casa de lenocinio (*a house of ill fame*) se define así: 'una casa establecida para la conveniencia y refugio de personas que desean tener comercio sexual ilegal, y en la cual tal comercio se practica.' *United States* v. *Snow,* 9 Pac. 501, 504, 4 Utah, 280; *Posnett* v. *Marble,*

20 Atl. 813, 816; 62 Vt. 481.   11 L. R. A. 162, 22 Am. St. Rep. 126."
4 Words & Phrases Judicially Defined, 3359.

"Una casa de lenocinio es un estorbo público (*nuisance*) según
la ley común, porque sostiene abierto un incentivo para la comisión
de obcenidades que corrompen la moral pública.   Las palabras '*ill
fame*' se usan para dar nombre y caracterizar la casa, y no se re-
fieren a su reputación.   Lo mismo en la ley común que en el len-
guaje usual las palabras '*house of ill fame*' significan una casa fre-
cuentada o visitada para el propósito de la prostitución.   *State* v.
*Plant,* 32 Atl. 237, 67 Vt. 454, 48 Am. St. Rep. 821."   4 Words &
Phrases Judicially Defined, 3359.

Escriche en su "Diccionario de Legislación" define "casa
pública" como "la de mujeres de mal vivir," y hace refe-
rencia a *burdel,* que quiere decir "la casa pública de mujeres
mundanas que antiguamente había en muchas ciudades," y
entonces hace referencia a *lenocinio,* acerca del cual se ex-
presa así:

"El infame comercio de prostitución de mujeres.   La ley 1°., tít.
22, part 7ª., divide en cinco clases las personas que se dedican a este
oficio: 1ª., de los bellacos que guardan las rameras públicas en el
burdel, tomando parte de su ganancia; 2ª., de los que como cha-
lanes, corredores o mediadores andan solicitando a las mujeres que
están en sus propias habitaciones, para los hombres que les dan algún
interés en premio de su vileza; 3ª., de los que tienen en su casa
mozas que se prostituyen, con el objeto de percibir la ganancia que
ellas hacen por este medio; 4ª., de los viles maridos que sirven de
alcahuetes a sus mujeres; 5ª., de los que por algún lucro consienten
en su casa la concurrencia de mujer casada u otra de buen lugar para
hacer fornicio, sin ser sus medianeros ni sus cómplices.   Todas estas
personas se llaman *lenones,* rufianes o alcahuetes; pueden ser acu-
sadas por cualquiera del pueblo, y probado el delito, incurren en las
penas siguientes: el *lenon* o *rufián* de la 1ª. clase, será desterrado
del pueblo con las rameras que guardaba; el de la 2ª., perderá la
casa para el fisco y pagará diez libras de oro; el de la 3ª., ha casar
y dotar la mujer, o haber la pena de muerte; y en ésta incurren
también los de la 4ª. y 5ª.; bajo el concepto de que lo dicho tiene
lugar igualmente respecto de las mujeres alcahuetes: ley 2ª., tít. 22,
part. 7ª.

"Las leyes de la Recopilación, sin hacer clases ni diferencias de
rufianes, las imponen por la primera vez que se les aprehenda, como

tengan ya diez y siete años, las penas de vergüenza pública y diez años de galeras; por la segunda vez las de cien asotes y galeras perpetuas; por la tercera la de muerte de horca, habiendo de perder siempre las armas y ropas que llevaren consigo al tiempo de la aprehensión, con destino al juez y acusador por mitad; y cualquiera persona puede por su propia autoridad prender a los rufianes donde quiera que los halle, y presentarlos sin dilación a las justicias; bajo el concepto que por el delito de lenocinio quedan desaforados los militares, y su jurisdicción ha de proceder a la averiguación del delito, y probado que sea, declarará ser caso de desafuero, y entregará los reos con los autos a la justicia ordinaria: leyes 1ª., 2ª.; 4ª. y 5ª., tít. 27, y ley 2ª., tít. 14, lib. 12, Nov. Recop.

"Mas ni las penas de las Partidas, ni las de la Recopilación están ya en observancia; y el suplicio capital se conmutó por costumbre general de los tribunales con la pena de azotes, con la de sacar a los alcahuetes emplumados, o bien con una coraza en que se ven pintadas varias figuras alusivas a sus delitos, y con el destino de los hombres a presidio y de las mujeres a la galera; y a los maridos consentidores se les emplumaba, se les ponía pendientes del cuello una sarta de astas de carnero, y luego se les enviaba a presidio. Pero habiendo caducado algunas de estas penas, no podían aplicarse otras que las de destierro, o presidio y galera. V. *Burdel, Alcahuete, Mujer pública y Prostitución.*

"Actualmente, se castiga el delito de lenocinio con las penas marcadas en el Código Penal, expuestas en el artículo de esta obra *Corrupción de menores.*"

A primera vista parece que siendo el significado de una casa de lenocinio, *a house of ill fame,* tan bien conocido en castellano y en inglés, las palabras "frecuentada para la prostitución y lascivia," *resorted to for the purpose of prostitution, or lewdness,*" eran innecesarias. Sin embargo, el legislador las empleó y ello revela su clara intención de definir él mismo el alcance del hecho que consideraba delictivo. No basta que la casa de lenocinio se establezca. Es necesario que actualmente sea frecuentada para la prostitución o lascivia. Siendo esto así, opinamos que la corte de distrito debió haber declarado con lugar la excepción de la acusada. Una denuncia en la cual no se exprese que la casa de lenocinio establecida por el acusado, es frecuentada para la pros-

titución o lascivia, es fatalmente defectuosa, porque no imputa al acusado el hecho delictivo en toda su extensión.

La circunstancia de alegarse en la denuncia que la acusada ejercía o practicaba en la casa que tenía establecida, con su cuerpo, actos carnales de prostitución y lascivia, no es bastante. No imputa el delito en la segunda de sus formas, o sea la residencia voluntaria en una casa de lenocinio frecuentada para la prostitución y lascivia, hecho generalmente cometido por esas desgraciadas mujeres desprovistas de todo pudor, sin energía para luchar dignamente en el mundo, que no son sólo el objeto del vicio carnal en sí, sino del comercio que con motivo de tal vicio realizan hombres o mujeres más indignos que ellas todavía. Además, aunque se pudiera concluir que implícitamente se alegaba la residencia voluntaria, siempre nos encontraríamos con que la casa de lenocinio a que se refiere la denuncia no está calificada de acuerdo con la ley.

Tampoco puede sostenerse que las últimas palabras complementan las primeras de modo que pueda concluirse que se imputa a la acusada la comisión del delito en la primera de sus formas, pues se ha decidido que "para que el lugar constituya una casa de lenocinio, debe ser frecuentada más de una vez para el propósito de la prostitución y lascivia por otros que no sean el propietario, aunque no se necesita que sea usado habitualmente o por un período considerable de tiempo para tal propósito. Se ha decidido que un número de actos ilícitos con el propietario no convertirá el lugar en una casa de lenocinio." 9 R. C. L. 219 y casos citados.

Por virtud de lo expuesto, debe revocarse la sentencia recurrida y absolverse a la acusada.

> *Revocada la sentencia recurrida y absuelta la acusada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.