## THOMAS JAMES CLARK v. STATE.

No. A-9266.   Nov. 12, 1937.
(73 P. 2d 481.)

O. A. Cargill, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., for the State.

BAREFOOT, J. The defendant was charged with the crime of murder, was convicted of manslaughter in the second degree and given a sentence of three years in the penitentiary, and has appealed.

This charge was the outgrowth of a collision of a truck driven by defendant and an automobile driven by Paul Coonrod, Sr., at 909 Southwest Twenty-Ninth street, in Oklahoma City, at about 8 a. m., April 7, 1935. In this Collision Ollie Coonrod, the wife of Paul Coonrod, and his son, Paul Coonrod, Jr., were both killed.

The information in this case was filed on June 21, 1935, and consisted of two counts, which were as follows:

"First Count: That is to say, the said defendant in the county and state aforesaid, and on the day and year aforesaid, then and there being did then and there wilfully and feloniously, while under the influence of intoxicating liquor, drive, run, propel and operate a certain motor vehicle to wit: a certain 1933 Dodge truck automobile 1934 license tag 668-T-937 in, upon and over a certain public street in Oklahoma City, said county and state to wit: in the 900 block on Southwest 29th street in Oklahoma City, said county and state, in an easterly direction, and in a reckless and careless manner; and while so under the influence of intoxicating liquor, and driving and operating the said automobile as aforesaid, the said de-

fendant did at approximately 909 Southwest 29th street in Oklahoma City, said county and state, unlawfully, wrongfully and feloniously drive into and strike a certain Dodge coupe automobile being driven in a westerly direction at said time and place by Paul Coonrod, with such force and in such manner as to then and there and thereby inflict upon the body of Paul Coonrod, Jr., who was then and there and thereby at said time and place riding as a passenger in said Dodge coupe driven by Paul Coonrod, Sr., certain mortal wounds of which said mortal wounds so inflicted as aforesaid, the said Paul Coonrod, Jr., did linger and lingering, did die, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma;

"Second Count: That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there unlawfully, wilfully, wrongfully and feloniously run, drive, propel and operate a certain automobile, to wit: a certain 1933 Dodge truck automobile, 1934 License Tag 668-T-937, upon and over a certain public street in Oklahoma City, said county and state, to wit: in the 900 block on Southwest 29th street, in Oklahoma City, said county and state, in an easterly direction, and in a reckless and careless manner, at a high and dangerous speed, imminently dangerous to others and evincing a depraved mind, regardless of human life, and while so driving said automobile as aforesaid, he, the said defendant, did at approximately 909 Southwest 29th Street in said Oklahoma City, said county and state, unlawfully, wrongfully and feloniously drive into and strike a certain Dodge coupe automobile being driven in a westerly direction at said time and place by Paul Coonrod with such force and in such a manner as to then and there and thereby inflict upon the body of Ollie Coonrod who was then and there riding as a passenger in said Dodge coupe driven by Paul Coonrod, Sr., certain mortal wounds of which said mortal wounds so inflicted as aforesaid, the said Ollie Coonrod did linger and lingering did die, contrary to the form of

the statutes in such cases made and provided against the peace and dignity of the state of Oklahoma."

No motion or demurrer was filed by the defendant prior to the trial attempting to challenge the sufficiency of the information. After the jury had been impaneled, and the assistant county attorney had begun his statement to the jury, defendant's counsel for the first time objected to proceeding further, and to the taking of any testimony in the case for the reason that the information, first, did not state facts sufficient to constitute a cause of action; second, that the same was duplicitous; and, third, that the first count in the information charged the defendant with killing Paul Coonrod, Jr., and the second count charged him with killing Ollie Coonrod, thus charging two separate and distinct crimes in the information. The county attorney's attention being called to this allegation made the statement that the placing of the name of Ollie Coonrod in the second count of the information was a typographical error of the stenographer in preparing the same, and asked leave to dismiss the second count of the information and proceed to trial on the first count. This request was permitted by the court over the objection of the defendant, and his motion was then overruled by the court, to which ruling he excepted, and the case proceeded to trial on the information as originally drawn, with the second count eliminated. This constitutes the first error complained of by defendant. In his brief they are set out as follows:

"(a) The court erred in overruling the defendant's objection to the introduction of evidence on an information that was faulty and defective, and did not contain, nor constitute a cause of action in favor of the state and against the defendant.

"(b) That error was committed by the trial court in

permitting the state to amend the faulty, duplicitous and defective information in substance and after the beginning of the trial, without the defendant being arraigned thereupon, or being permitted to plead thereto; and that the state's dismissal constituted a conclusion of the charge under the particular information whereupon he was being tried, and that his jeopardy terminated and the continuation of the trial was error.

"(c)   That the court erred in permitting the introduction of evidence of a precedent crime, namely, leaving the scene of an accident, which precedent crime was not charged or set out in the faulty, duplicitous and defective information; the admission of which evidence was prejudicial to the rights of the defendant."

Homicide, under the statutes, Oklahoma Statutes 1931, § 2216 (Okla. St. Ann. tit. 21, § 701, p. 254), is murder in the following cases:

"1.   When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being.

"2.   When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"3.   When perpetrated without any design to effect death by a person engaged in the commission of any felony."

The information in the instant case was based upon the third subsection of the above statute, that the murder was committed by defendant "without any design to effect death by a person engaged in the commission of any felony."   The statute relied upon as constituting a felony was Oklahoma Statutes 1931, § 10324 (47 Okla. St. Ann. § 93) which provides:

"It shall be unlawful for any person who is under

the influence of intoxicating liquor, or who is a habitual user of narcotic drugs, and the having on or about one's person or in said vehicle of said intoxicating liquor is prima facie evidence of a violation of this act, to operate or drive a motor vehicle on any highway within this state, as defined in section 1, of this act [10322] and any person violating the provisions of this section shall be deemed guilty of a felony and shall be punished by imprisonment in the penitentiary not more than one year, or a fine of not more than two thousand ($2,000) dollars, or by both imprisonment and fine."

Sections A and B, under proposition 1, may be considered together. Oklahoma Statutes 1931, § 2883 (Okla. St. Ann. tit. 22 § 401, p. 155), provides:

"The indictment or information must contain:

"1. The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.

"2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Oklahoma Statutes 1931, § 2886, Okla. St. Ann. tit. 22, § 404, p. 171, provides:

"The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the same offense may be set forth in different forms or degrees under different counts; and where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same court."

Oklahoma Statutes 1931, § 2890 (Okla. St. Ann. tit. 22, § 408, p. 187) provides:

"Words used in a statute to define a public offense, need not be strictly pursued in the indictment or information; but other words conveying the same meaning may be used."

Oklahoma Statutes 1931, § 2891 (Okla. St. Ann. tit. 22, § 409, p. 192) provides:

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended.

"7. That the act or omission charged as the offense, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction according to the right of the case."

Oklahoma Statutes 1931, § 2892 (Okla. St. Ann. tit. 22, § 410, p. 206), provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

These statutes are a radical departure from the old common law with reference to criminal law and criminal procedure. Many of the technicalities of common-law pleading, and especially as construed by some of the older cases, no longer apply when construed under the terms of the above statutes. Their purpose was the elimination from the trial of cases of many immaterial matters, and especially to repeal the common-law doctrine that penal statutes should be strictly construed, and established in this state the equitable doctrine of a liberal construction.

These statutes have special application to indictments and informations. It does away with the strict construction once placed upon these pleadings, and makes them sufficient if a person of ordinary understanding can know what was intended by the terms used. They place upon the courts the duty of holding them sufficient unless they are so defective as to prejudice the rights of the defendant upon the merits of his case. Applying the above statutes and the construction placed upon them by the courts of this state to the information here filed, we find that the first count charges the defendant with willfully, unlawfully, and feloniously committing the crime of murder. It then alleges the manner and form in which the act was committed by the defendant, by stating, "and while under the influence of intoxicating liquor"; and further alleges: "In a reckless and careless manner and while so under the influence of intoxicating liquor." In our opinion, the information apprised the defendant of the charge that was intended to be made against him, viz., that of murder, under subsection 3, section 2216, Okla. Stats. 1931 (Okla. St. Ann. tit. 21, § 701, p. 254). It charged him with the crime of murder while engaged in the commission of a felony. It would have been better pleading to have stated in the information the exact words of the statute, "engaged in the commission of any felony," but instead of doing this the pleador stated in full how the crime was committed, and the allegations in the information follow the statute, which makes the driving of a truck or automobile while under the influence of intoxicating liquor a felony. Under statutes similar to ours, the courts have held where the defendant is charged with murder while engaged in the commission of a felony it is unnecessary to allege that the act was committed "without any design to effect death," and especially is this true under subdivision 3 of

the act, defining murder under our statutes (21 Okla. St. Ann. § 701, subd. 3) 30 C. J., p. 113; Keezer v. State, 90 Neb. 238, 133 N. W. 204; Wharton on Homicide, p. 875, § 574; Carle v. State, 34 Okla. Cr. 24, 244 P. 833.

The contention that the information was duplicitous was true until the second count was dismissed. It alleged two separate and distinct cases. The defendant could not have been tried for both of these crimes under the allegation of the same information, but with the dismissal of the second count we do not see that the first count is in any way duplicitous. Neither do we think the court was in error in proceeding with the trial upon the first count after the dismissal of the second count without rearraigning the defendant. Section 2886 (22 Okla. St. Ann. § 404, p. 171) supra, gives the right to set out different offenses in separate counts of the indictment or information, and the same offense may be set forth in different forms or degrees under different counts. This section clearly gives the right to dismiss one of the counts and rely upon the other and would not require a rearraignment of the defendant, nor would it constitute jeopardy as is here contended. Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285.

In the case at bar, the defendant was properly charged with the crime of murder, as above stated, under the statute that the killing of another while engaged in the commission of a felony constitutes that crime. The court, under the holdings of this court, properly instructed the jury upon murder, manslaughter in the first degree, and manslaughter in the second degree. Warren v. State, 6 Okla. Cr. 1, 115 Pac. 812, 817, 34 L. R. A. (N. S.) 1121; Byars v. State, 7 Okla. Cr. 650, 126 Pac. 252; Rhea v. Territory, 3 Okla. Cr. 230, 105 Pac. 314; Taylor v. State, 44 Okla. Cr. 58, 278 Pac. 1117; Irby v. State, 18 Okla. Cr.

671, 197 Pac. 526; Smith v. State, 20 Okla. Cr. 301, 202 Pac. 519.

The jury convicted the defendant of manslaughter in the second degree, and assessed his punishment at three years in the penitentiary. The evidence was conflicting as to whether defendant was under the influence of intoxicating liquor at the time of the collision. The defendant testified that he was not; many others testified he was. The jury by its verdict found these issues against the defendant. The jury, under the law and facts in this case, might have been justified in finding the defendant guilty of a greater offense, but as stated in the case of Warren v. State, supra, "but let that be as it may, defendant cannot be heard to complain that he has been convicted of a less offense than the one he actually committed." This case, quoting from the case of State v. Lindsey, 19 Nev. 47, 50, 5 Pac. 822, 823, 3 Am. St. Rep. 778, says:

"But suppose the jury, in charity for the faults and weakness of the human race, sympathy for the prisoner, or any other mistaken view of the law or the facts, lessens the offense to murder in the second degree, is the prisoner to go free? Does not the case stand precisely upon the same plane as a verdict of murder in the second degree, in any case not enumerated in the statute, where there is a willful, deliberate, and premeditated killing? Is it not as much the duty of the jury in such a case to find the prisoner guilty of murder in the first degree as in the cases specially enumerated in the statute? Suppose the jury in such a case, where the evidence is positive, clear, plain, and satisfactory beyond a reasonable doubt, regardless of all the testimony, and in violation of the well-settled principles of law, should find the prisoner guilty of murder in the second degree, would the prisoner be entitled to a new trial upon the ground that the verdict is against the evidence? Is it not a fact that juries fre-

quently render just such verdicts, and the result cannot be accounted for upon any theory other than that of a compromise of opinion? Why should such verdicts be allowed to stand? The answer is plain. The reason is that the statute leaves the question of degree to be settled by the verdict of the jury."

We will not quote further, but be content with citing additional cases that have maintained this principle throughout the history of the courts of this state. Turner v. State, 8 Okla. Cr. 11, 126 Pac. 452; Holmes v. State, 6 Okla. Cr. 541, 119 Pac. 430 and 120 Pac. 300; Jones v. Territory, 4 Okla. 45, 53, 43 Pac. 1072, 1075; Wright v. Territory, 5 Okla. 78, 80, 47 Pac. 1069, 1070; Smith v. Territory, 11 Okla. 656, 657, 69 Pac. 803; Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285; Brock v. State, 39 Okla. Cr. 162, 263 Pac. 1115.

It is next contended by defendant that the court erred in permitting the transcript of Paul Coonrod, Sr., taken at the preliminary hearing of this defendant, to be read, for the reason that the state had failed to show due diligence to produce this witness in person, and that the rights of defendant had been violated by not being personally confronted by this witness. The record discloses that this witness had been employed by a corporation in Oklahoma City, and that a short while before the trial on October 26, 1936, his company had transferred him permanently to the state of Michigan. His whereabouts was first learned by the county attorney upon the return of the subpoena that was issued for him on October 19, 1936, and returned October 26, 1936. The deputy sheriff who attempted to serve him was placed upon the witness stand by the state, and definitely testified that the witness had moved from Oklahoma to the state of Michigan. This was also established by the testimony of Mr. Rittenhouse, an

attorney for the company who wired Mr. Coonrod during the trial at the request of counsel for the defendant. Under this definite showing that the witness had permanently moved from the state and was without the jurisdiction of the court, and this information not being received by the county attorney until the case was ready for trial, under the prior opinions of this court it was not error to permit the transcript of the witness to be read. It was taken in the preliminary examination of the defendant when both he and his present counsel were present and he was cross-examined, and the defendant had the benefit of this cross-examination. The rule that has been established in this state is well stated in the case of Bryant v. State, 33 Okla. Cr. 383, 244 Pac. 453, 454, where it is said:

"It is the well-established doctrine in this state that, where the testimony of the witness was given at a preliminary examination, and taken down by the reporter in the presence of the defendant and his counsel, who cross-examined him, and such testimony was filed with the clerk, the transcript is admissible, where the witness is not present and cannot be found in the jurisdiction. Fitzsimmons v. State, 14 Okla. Cr. 80, 166 Pac. 453; Jeffries v. State, 13 Okla. Cr. 146, 162 Pac. 1137; Henry v. State, 10 Okla. Cr. 369, 136 Pac. 982, 51 L. R. A. (N. S.) 113; Edwards v. State, 9 Okla. Cr. 306, 131 Pac. 956, 44 L. R. A. (N. S.) 701; Valentine v. State, 16 Okla. Cr. 76, 194 Pac. 254; Clark v. State, 28 Okla. Cr. 31, 228 Pac. 791."

We have carefully examined the cases cited by the defendant to sustain his contention. They are Golden v. State, 23 Okla. Cr. 243, 214 Pac. 946, 947; Davis v. State, 20 Okla. Cr. 203, 201 Pac. 1001; Foster v. State, 35 Okla. Cr. 70, 248 Pac. 847; Scott v. State, 43 Okla. Cr. 232, 278 Pac. 393. In the Golden Case, the return of the subpoena

simply showed that the witness was "not found." There was no showing that he was out of the state or out of the jurisdiction of the court. In the Davis Case, the witness was a resident of Grady county, Okla. No subpoena had been issued for him. He had promised orally to attend the trial, but no effort to serve him had been made by the state. At the time of the trial he was only temporarily out of the state; the court holding that under the circumstances the transcript could not be introduced. In the Foster Case, the testimony was taken in a case other than in the case of defendant, and the court held that evidence taken in a proceeding in which the defendant was not a party was prejudicial error. In the Scott Case, the record showed that a subpoena for the witness was issued September 25, 1935, and returned September 26, 1935, showing that John Millsap was in Ft. Smith, and Jeff Davenport (the witness whose testimony was read) was somewhere in Texas, not found in Le Flore county. The record showed that the witness John Millsap was afterwards presented at the trial and testified. The reporter who took the evidence at the preliminary was called as a witness. The court advised the county attorney to call the officer who attempted to make service, but this was not done. Another witness was called who testified that something like a month ago he had heard from the witness near Sherman, Tex., on a rural route. He did not produce the letter, and on cross-examination, when asked if he could swear of his own knowledge that this witness was not within the state of Oklahoma, he answered: "No, sir." Under this state of facts, Judge Davenport, in the above case, speaking for the court, held that a proper showing had not been made to permit the reading of the transcript. It will thus be seen that all of the above cases are distinguishable from the case at bar.

It is next contended by defendant that the court erred in making unwarranted and unjustified attacks upon counsel for defendant, both within and without the presence of the jury, and manifested throughout the trial a hostile and difficult attitude toward defendant's counsel, severely reprimanding him and levying fines upon him, along with a jail sentence for conduct which he arbitrarily deemed contemptuous, which conduct created a hostile feeling in the jury toward the defendant, to prejudice his rights and prevent his having a fair and impartial trial.

It might not be best for this court to comment upon this assignment of error, but we have carefully read the record giving special attention to this proposition. From a reading of the record one is convinced that the court and counsel for defendant were not on the best of terms with each other when the trial of this case started, and this record discloses possibly for that very reason each of them, recognizing their high calling as members of a noble profession, and the high regard for the offices which each held, were doubly careful to see that nothing transpired in this case which would in any way interfere with the rights and liberty of this defendant on the one hand, and that every deference was paid to the court, and the high position which he held on the other hand. This record discloses many instances in which the court was careful to say or do nothing in the presence of the jury to jeopardize the rights of the defendant, and it abounds with statements on the part of counsel for defendant showing his respect for the court and the high position which he occupies, and which counsel so readily recognized. It is true there arose a controversy between the court and counsel as to the admissibility of certain evidence which counsel in his opening statement to the jury stated would be offered in evidence. The court did not think this evi-

dence was admissible. In the discussion which took place with reference thereto, the jury was excused and were not present when a fine and jail sentence of one day was assessed by the court. Counsel honestly believed that the evidence was admissible, and this was shown the following morning when he presented authorities which he claimed substantiated his contention. It is true that newspapers in the city published accounts with reference to the court proceedings, but the evidence in the record shows that the court was careful that the jury was not permitted to read these accounts. The bailiffs both testified that no newspapers had reached the jury, and they heard no radio talks with reference thereto. As above stated, very little of the controversy was had in the presence of the jury, and we do not believe that the jury in this case was in any way prejudiced against the defendant by reason of the proceedings therein. The defendant was ably represented, and in a manner that was well befitting his counsel. The results demonstrate this fact.

This case well illustrates the follies of life led by some people. This defendant, a young man only 19 years of age, was employed by his father in the oil fields of Oklahoma City. His parents were trying to educate him, and at the same time teach him the duties and responsibilities of honest labor. In disobedience of their instructions he procured his father's truck when he had finished work on Saturday night, and in company with a young woman, whom the record shows was not of the best repute, he visited beer joints and dance halls, imbibing in liquor and drinking until the early hours of the morning, when, in company with the young woman, he went to the home of some of those whom he had met at the dance halls, and they again procured a fresh supply of liquor and gin and proceeded to make a night of it without sleep or rest.

Early the next morning, in company with one of his companions, he ventured upon the streets of a populous city, driving his truck, and, as the testimony shows, in utter disregard of the rights of others. The result was that the life of an innocent woman and her son was swept into eternity, and by a verdict of a jury of the citizens of this county, through his criminal negligence and carelessness, he is not alone to suffer, but his good parents will carry their part of the burden for his night of fun.

The judgment of the district court of Oklahoma county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.