## MINNIE ABRAMS v. STATE.

No. A-2640.   Opinion Filed December 15, 1916.

(161 Pac. 331.)

1.  **PROSTITUTION — Pandering — Information.** An information charging a person with the crime of pandering which only pleads the general terms of the statute, and alleges that the accused "did by promise and device and scheme persuade and encourage" a female named to become an inmate of a house of prostitution, is insufficient, when properly challenged by demurrer, for the reason that it is impossible for the accused, under the information, to know what kind of promise the state intends to prove, whether a promise of employment or remuneration, gift or forbearance, or which one of the almost innumerable and inconceivable devices and schemes named in the statute the state intends to rely upon, and ignores the constitutional and statutory safe-

guard and guaranty that an indictment or information must contain a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

2. **SAME—Nature of Offense.** The gist of the offense of pandering is not that a woman is in a house of prostitution, but that she has been procured or induced by some of the means named in the statute to enter or remain in a house of prostitution. Hence a state of facts must be pleaded that will show that the person charged did in reality, by some one or more of the means named in the statute, procure or induce the female to enter or remain in such house.

3. **INDICTMENT AND INFORMATION—Presumption of Innocence.** Since every person is presumed to be innocent until proved guilty, it logically follows that he must be presumed also to be ignorant of what is intended to be proved against him, except as he is informed by the indictment or information.

4. **SAME—Sufficiency—Language of Statute.** Where words or terms used in the statute have no technical or precise meaning which of themselves imply or define the offense, then the indictment or information must set forth the particular things or acts charged to have been done with reasonable certainty and distinctness.

5. **SAME.—Nature of Offense—Certainty.** It is not a technical, but a sound and fundamental rule of criminal procedure that the accused must be apprised at the outset by the indictment or information with reasonable certainty of the nature and cause of the accusation against him.

*Error from District Court, Comanche County;*
*Cham Jones, Judge.*

Minnie Abrams was convicted of violating the pandering statute, and she brings error. Reversed.

*J. F. Thomas,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J. The plaintiff in error in this case, Minnie Abrams, who will be referred to as defendant, was charged jointly with her husband, George Abrams, with violating our statute on pandering. A severance was had,

and the defendant, Minnie Abrams, was tried, convicted, and sentenced to two years in the penitentiary and to pay a fine of $500, and from this judgment and sentence she appeals to this court.

The appeal is by transcript, and the complaint urged is the insufficiency of the information, which objection was properly raised by demurrer and motion in arrest of judgment. And it is our judgment that this complaint is well taken.

The charging part of the information is that:

"* * * * On the 5th day of August, 1915, George Abrams and Minnie Abrams, then and there being, did then and there willfully, unlawfully, and feloniously procure a female, to wit, Rose Stanfield, to become an inmate of a house of ill fame, to wit, a place where prostitution was encouraged and allowed in the said State of Oklahoma, to wit, at the rooming house of the said defendants, George Abrams and Minnie Abrams, at No. 317 E avenue, in the city of Lawton, Comanche county, Okla., and did by promise and device and scheme persuade and encourage the said Rose Stanfield to become an inmate of said house of prostitution contrary to the form of the statute in such case made and provided and against the peace and dignity of the state."

The state insists that the information uses the very language of the statute in charging the offense, and that that is sufficient to make the information good. In reply to this we will say that there are many cases in which an information or indictment drawn in the language of the statute is good, but there are also many other cases in which this is not true. Hence it is a general rule, and the statutory rule in this state, that the particular circumstances of the offense, and the acts constituting it,

must be charged, when they are necessary to constitute a complete offense, or to inform the court, or person charged, as to what is intended.

The gist of this offense is not that a woman is in a house of prostitution, but that she has been procured or induced by some of the means named in the statute to enter or remain in a house of prostitution. Hence a state of facts must be pleaded that will show that the person charged did, in reality, by some one or more of the means named in the statute, procure or induce the female to enter or remain in such house. There might be a promise made to a female which would be so insignificant and trivial that it would appear upon its very face that it was not the inducement or procuring cause of her entering or remaining in such house of prostitution, but that she, in fact, entered or remained in such house of prostitution of her own volition, and not by reason of such trifling and trivial promise, which the court could see at once was too insignificant to influence the conduct of any human being.

Besides, since every person is presumed to be innocent until proved guilty, it logically follows that he must be presumed also to be ignorant of what is intended to be proved against him, except as he is informed by the indictment or information. *People v. Marion,* 28 Mich. 255; *State v. McKenna,* 24 Utah, 317, 67 Pac. 815. Hence it has been well said that:

"Where * * * the words or terms used in the statute have no technical or precise meaning, which of themselves imply the offense, or where the particular facts or acts which shall constitute it are not specified, but, from the general language used, many things may be done which may constitute an offense, it is then necessary, in charging an offense claimed to be embraced within the general

language of the statute, to set forth the particular things or acts charged to have been done, with reasonable certainty and distinctness, so that the court may determine whether an offense within the statute is charged, or one over which it has jurisdiction, and so that the defendant may be advised of the particular nature of it, in order to defend against it, and to plead in bar a judgment of conviction or acquittal thereof, if subsequently prosecuted." (*People v. Perales,* 141 Cal. 581, 75 Pac. 170.)

Utah has a statute very similar to ours on the subject of pandering, and in *State v. Topham,* 41 Utah, 39, 123 Pac. 888, in passing upon an indictment very similar to the information under consideration, the Supreme Court of that state, in a very able and elaborate opinion, held that the mere language of the statute was too general and indefinite, and was not sufficient to inform the defendant of the particular acts or conduct complained of, and said:

"Should one assert to another that he had a 'device or scheme' to accomplish a particular result, would that 'in ordinary and concise language enable a person of ordinary understanding to know what was intended' or meant? To enable such a person to know what was intended, would not the first question necessarily be, 'What is the device or scheme?'

"When the defendant was charged that she had 'by divers devices and schemes' accomplished a particular result, who but the pleader knew what was intended or expected to be proved against her in such respect? Or, if it should be claimed that she by 'threats' had accomplished such result, again, who but the pleader could know with reasonable certainty what menacing act or conduct of hurt, or fear, or threatening menace to inflict pain or punishment or injury to person, reputation, or property, or to restrain freedom of action, was intended or expected to be proved? Should one complain of another that he 'threatened' him, would not again the first ques-

tion necessarily be, in order to 'enable a person of common understanding to know' what was meant or intended, 'What did he say or do?' And, if it should be claimed that the defendant by 'promises' had accomplished such result, again, could any one but the pleader know with reasonable certainty just what particular acts or conduct in that regard was intended or expected to be proved? This information may be looked at with the utmost liberality, and yet what facts or circumstances or acts are there set forth from which the court may determine whether a promise or promises in law were made by the defendant, if it should be claimed that she, by such means, accomplished the charged result, or a threat made or device or scheme used or employed, if by either of these it be claimed the defendant accomplished such result? Neither she nor any one else except the pleader could know whether he intended to prove some kind of a promise or a threat or a device or scheme. Under the information, if it is. good, the state would be permitted to prove anything which the prosecution thought tended to show a promise, anything a threat, anything a device, anything a scheme, and no objection to the offer of any such evidence could properly be made by the defendant. If that be true, then the state might as well be permitted in an information to generally charge the defendant 'with having committed the offense of pandering' and be allowed to, prove anything tending to show the commission of such an offense.

"Under this information neither the court nor the defendant, until the evidence was adduced, could know what particular acts or conduct would be claimed had been committed by the defendant, and until then the court could not know whether an offense had been charged, nor the defendant' what she was called upon to meet and answer. * * * Should one either in a civil or criminal pleading charge another at a specified time and place 'with having cheated and defrauded' him, without alleging the acts, the conduct, the facts constituting the cheat or fraud, certainly no one would contend that to be a suf-

ficient pleading to withstand a demurrer. What more has been done here? The pleader has stated his conclusion that the defendant has said or done something, that she has been guilty of some kind of conduct or committed acts of some kind, which in his opinion amount to a promise or a threat or a device or a scheme, but has withheld from the court and the defendant a statement of any acts committed, or things said or done, by her, or any facts or circumstances from which it may be determined whether in law a promise or threat was made, or a device or scheme used or employed, by her. The acts and conduct of the defendant, and the facts and circumstances constituting the promise, the threat, the device, the scheme, were required to be alleged in the information, so that the court could judge whether the accused should have been put upon trial, and that she might then know what she was to defend against."

And the court cites numerous cases in support of this position.

In the case at bar it was impossible for the defendant, under the information, to know what kind of promise the state intended to prove, whether a "promise of employment or remuneration, investment, gift, forbearance, or to do or not to do one or more of almost innumerable and inconceivable things"; for no one could know from the information until the evidence was in what character of promise the state did intend to prove, nor which one of the almost innumerable and inconceivable devices or schemes named in the statute the state intended to rely upon. And we hold with *State v. Topham, supra,* that:

"It is not a technical, but a sound and fundamental rule in the law of criminal procedure that the accused be apprised, not by the evidence adduced, but at the outset, by the indictment or information, with reasonable certainty, of the exact nature of the accusation against him.

This rule cannot be bent to meet exigencies of a particular case, nor the class or grade of the person accused. The Constitution and the statute prescribe the rules by which the sufficiency of an information may be determined, and they apply to all alike. They do not prescribe one rule for a keeper or director of a house of prostitution and another for a nun, nor one rule for one offense and another for another offense."

Hence we think in the case at bar the information fails to comply with the constitutional guaranty and the statutory safeguard that:

"An indictment or information must contain:  *  *  * A statement of  *  *  * acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." (Section 5738, Rev. Laws 1910.)

The judgment is therefore reversed, and the cause remanded, with directions to the trial court to sustain the demurrer to the information. And the warden of the penitentiary at McAlester is directed to surrender the plaintiff in error to the sheriff of Comanche county, who shall hold her in custody subject to the further orders of the district court of said county.

DOYLE, P. J., and ARMSTRONG, J., concur.