## W. A. TOWNSEND v. STATE.

No. A-5809. Opinion Filed June 11, 1927.
(256 Pac. 942.)

Warren & Warren, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Leverett Edwards, Asst. Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Choctaw county upon a charge of pandering and was sentenced to serve a term of five years in the state penitentiary and to pay a fine of $500.

Section 1846, Comp. Stat. 1921, provides:

"Any person who shall procure a female inmate for a house of prostitution, or who, by promise, threats, violence or by any device or scheme shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution; * * * or who shall by promise, threats, violence, or by any device or scheme, cause, induce, persuade or encourage an inmate of a house of prostitution to remain therein as such inmate; * * * shall be guilty of pandering. * * *"

Predicated upon this statute, the information alleges:

"That the said W. A. Townsend did then and there unlawfully, willfully, wrongfully, knowingly, intentionally, and feloniously procure, cause, induce, persuade, and encourage a female person, to wit, Bertie Dean, to become an inmate of a house of prostitution, to wit, the Avenue Hotel, the same being a house in the city of Hugo, Choctaw county, Okla., where prostitution was allowed and encouraged, by then and there agreeing with the said Bertie Dean that she might enter and remain in said Avenue Hotel without paying any regular room rent and by advising the said Bertie Dean that she could make plenty of money without working by entering and remaining in said Avenue Hotel and having sexual intercourse with men for pay, and by further agreeing with her, the said Bertie Dean, that she was to pay him, the said W. A. Townsend, the sum of $1 each and every time she had sexual intercourse with a man in said house, and she, the said Bertie Dean, was then and there and thereby caused, induced, persuaded and encouraged to and did become an inmate of the Avenue Hotel, aforesaid, and did commit acts of prostitution with male persons therein, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

The evidence supports the charge and is that the Avenue Hotel, as then conducted by defendant, had the reputation of being a place of prostitution, and was in fact a place of prostitution, and that defendant pro-

cured said Bertie Dean to engage in prostitution therein, by persuasion and by agreeing with her that she should engage in prostitution and should pay defendant $1 for each man with whom she had a date in said house; that said Bertie Dean induced thereby did become an inmate of said house as a prostitute and paid to defendant part of her earnings as such.

The first assignment of error argued is that the information is not sufficiently definite to apprise defendant of the particular offense sought to be charged; that since the crime of pandering may be committed in the many different ways set out in section 1846, Comp. Stat. 1921, the defendant is unable to tell the particular part of the statute relied on, or the particular manner in which the offense is sought to be charged. It is apparent from examining the section of the statute referred to that the offense of pandering may be committed in numerous ways as set out in said statute. Here, however, the charge is that the defendant procured, caused, induced, persuaded, and encouraged Bertie Dean to become an inmate of a house of prostitution, describing the house and setting out in detail the inducement, encouragement, and procuring cause by which she was persuaded to become such inmate. In setting out this inducement, it is incidentally alleged that defendant was paid by Bertie Dean, which is within itself made an offense in another part of this section. But it is clear that the charge is predicated upon that part of the statute making it an offense to procure an inmate to a house of prostitution. The contention is not that the information is defective by reason of failure to fully set out the particulars of the offense, but that the particulars are too fully pleaded. In the case of Abrams v. State, 13 Okla. Cr. 11, 161 P. 331, the pleading was challenged as pleading merely a conclusion,

which contention was sustained by the court. There it was charged:

"* * * On the 5th day of August, 1915, George Abrams and Minnie Abrams, then and there being, did then and there willfully, unlawfully, and feloniously procure a female, to wit, Rose Stanfield, to become an inmate of a house of ill fame, to wit, a place where prostitution was encouraged and allowed in the said state of Oklahoma, to wit, at the rooming house of the said defendants, George Abrams and Minnie Abrams, at No. 317 E. avenue, in the city of Lawton, Comanche county, Okla., and did by promise and device and scheme persuade and encourage the said Rose Stanfield to become an inmate of said house of prostitution contrary," etc.

And the court in considering it said that the particular circumstances of the offense and the acts constituting it should be charged, and that it was impossible under the charge as there laid for defendant to know what kind of promise the state intended to prove. To obviate that objection, the pleader here has set out in detail the promise or inducement relied on, and what was done pursuant to it. The mere fact that the pleading of these particulars disclosed the state might have elected some other subdivision of the statute does not render the pleading defective.

It is next contended that the court erred in its instructions to the jury. This assignment is directed to the fourth and fifth paragraphs of the court's charge. These instructions, in referring to the place where the offense is charged to have been committed, the Avenue Hotel, refers to it as a "house of prostitution" or "house of ill fame," apparently using the term "house of prostitution" and the term "house of ill fame" as synonymous. The first part of section 1846, supra, refers to a "house of prostitution," the latter part of the section to a "house of ill fame." This statute was en-

acted to prevent the evils of pandering, and it attempts to set out every contingency under which pandering may be committed, and denounce the offense whether applicable to a house of prostitution or a house of ill fame. It was said by Furman, J., in Edmonds v. State, 9 Okla. Cr. 603, 132 P. 923:

"* * * The purpose was to make this section broad enough to entirely cover and include every act which might constitute or enter into what is generally known as pandering, and we think that this is its effect. The purpose of the Legislature in adopting this section was as far as possible to break up and destroy the infamous traffic in female virtue which has assumed such proportions as to become a curse to society, more blasting and blighting than any plague or epidemic could be, more terrible than any black slavery or any other kind of slavery that ever existed in this or any other country has been, more degenerating to the morals and ideals of the nation, and more soul-destroying than all other agencies against decency combined. The Legislature intended, as far as possible, to prevent prostitution from ever becoming a commercialized institution in Oklahoma. This law was passed in answer to the demands of an enightened and aroused public conscience. * * *"

Where not defined by statute, there is little if any distinction in the meaning of these terms in common acceptation. A house of prostitution, a house of ill fame, and a bawdyhouse all mean a house resorted to for the purpose of prostitution. The term "house of ill fame," generally speaking, does not refer to the fame or reputation of the house. State v. Smith, 29 Minn. 193, 12 N. W. 524; State v. Boardman, 64 Me. 523; United States v. Snow, 4 Utah, 280, 9 P. 501.

It is next contended that the court erred in giving additional oral instructions to the jury after they had retired. It appears that during the deliberation of the jury they were brought into court, and in the presence of defendant and his counsel the court was informed

that additional instructions were desired. The court thereupon stated to them that the instructions already given covered the point if they would read them carefully, but that he would endeavor to make them more clear. He then explained the instructions and in a measure repeated a portion of the charge. No exception was taken to this proceeding.

Section 2730, Comp. Stat. 1921, reads:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the case, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

In Bird v. State, 22 Okla. Cr. 263, 210 P. 925, a somewhat similar situation arose, and this court said:

"While ordinarily we do not mean to approve of the giving of oral explanations of written instructions, pending the deliberations of the jury, yet under the circumstances here, where there were no specific objections to the giving of oral explanations, and where the explanations given did not amount to a material modification of the written instructions, the irregularity will be considered as waived."

See, also, Williams v. United States, 17 Okla. 28, 87 P. 647; Rea v. State, 3 Okla. Cr. 281, 105 P. 386, 106 P. 982. See, also, authorities in Bird v. State, supra.

Here the acts are charged as inducing a female to become an inmate of a house of prostitution and the adding thereto of the words, "house of ill fame," in the instructions is not error requiring a reversal.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.