590 P.2d 475

**STATE of Arizona, Appellee,**

v.

**Edward Leon PURYEAR, Appellant.**

**No. 1 CA–CR 3480.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 23, 1979.

John A. LaSota, Jr., Atty. Gen., by Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Richard A. Garcia, Kingman, for appellant.

## OPINION

HAIRE, Judge.

Appellant, Edward Leon Puryear, was indicated by a Mohave County Grand Jury on a charge of involuntary manslaughter, A.R.S. § 13–456A(2).[1] The case went to a jury trial and appellant was convicted. Following the pronouncement of a judgment, the court suspended the imposition of sentence and placed appellant on probation for two years. As a condition of probation, appellant was ordered incarcerated in the county jail for three months and was also ordered to pay a fine of $1,000. Appellant has filed a timely appeal and raises as issues the sufficiency of the indictment, the sufficiency of the evidence, and the adequacy of the involuntary manslaughter instruction given by the court. For reasons stated herein, we affirm the conviction and sentence of the trial court.

The facts necessary for a resolution of the issues on appeal are as follows:

On December 17, 1977, three young men went goose hunting in a field in Mohave County, Arizona. The field they chose was private property belonging to Spirit Mountain Farms. They set out goose decoys in a circular pattern in the field and took positions inside the circle of decoys, camouflaging themselves so as not to be seen by approaching geese.

After the young men had deployed themselves and their decoys, appellant, an employee of the owner of the property, approached the area on a farm road running next to the field. He noticed the decoys in the field and, thinking that they were geese, stopped the car about 200 yards away. He took a .22 caliber rifle, opened the door and exited partially from the car. With one foot resting on the ground and using the door of the car as a rest for the rifle, he fired two shots in the decoys. One of the shots struck one of the boys in the head, and he died later in the hospital.

The first issue concerns the sufficiency of the indictment. A.R.S. § 13–456A(2) provides as follows:

"A. Manslaughter is of three kinds:

\* \* \* \* \* \*

"2. Involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."

The indictment in pertinent part read as follows:

"COUNT 1: Involuntary Manslaughter

"On or about the 17th day of December, 1977, in the vicinity of 2 tenths of a mile north of mlp 224.85 on Hwy 95, Mohave Valley, Mohave County, Arizona, said Defendant, EDWARD LEON PURYEAR unlawfully killed, Jimmy Wilburn, all in violation of A.R.S. §§ 13–455, 13–456 A 2, as amended, 13–457 A, as amended, and 13–1647, as amended."

Appellant assigns as error the failure of the indictment to specifically allege the "unlawful act not amounting to a felony", the commission of which led to the victim's death. This Court has recently stated that involuntary manslaughter should be specifically pleaded. *State v. Rupp,* 120 Ariz. 490, 586 P.2d 1302 (App.1978). Although the *Rupp* case concerned the sufficiency of an information and not an indictment, we believe that the same principles should apply. A defendant is always entitled to adequate notice of the charge, regardless of the nature of the charging document. *See generally State v. Branch,* 108 Ariz. 351, 498 P.2d 218 (1972). Judged by the *Rupp* standard, the indictment was defective. It should have specifically alleged the required unlawful acts.

1. Arizona's newly revised criminal code took effect on October 1, 1978. All references to criminal statutes in this opinion are to those provisions effective prior to that date.

■ Nevertheless, *Rupp* also indicates that where no pre-trial motions are directed against it, a charging document may be sufficient if a defendant receives actual notice of the underlying charges. Here the defendant received full pre-trial disclosure of the prosecution's case. The defendant was also facing at the time of trial a six-count complaint in justice court charging him with various misdemeanor violations of the game and fish laws of the State of Arizona. Finally, one day before trial, the State filed a "Pre-trial Memorandum" in which it stated that it would prove that the following misdemeanors were committed: (1) hunting without a license, A.R.S. § 17–331; (2) use of an improper weapon for the taking of migratory birds, Game and Fish Commission Rule 12–4–53 (which is made a misdemeanor by A.R.S. § 17–309 A); and (3) use of an improper method of taking wildlife by shooting upon, from, or across or into a road or railway, A.R.S. § 17–301 B. These three misdemeanors were among the six charged in the complaint then pending before the justice court. It does appear, however, that appellant was not actually apprised of the unlawful acts upon which the State intended to rely in connection with its manslaughter prosecution until at least the day before trial and there is some indication in the record that counsel was not aware of the State's pre-trial memorandum until trial actually began.

■■ While it would have been better practice to have given appellant more complete notice of the charges against him, we are impressed by the fact that appellant made no complaint about the lack of specificity in the indictment until after the State's opening statement had been delivered to the jury, and that no record was made of the objection until after the first witness had undergone direct examination. Under Rule 13.5(c), Arizona Rules of Criminal Procedure, a defect in the charging document cannot be raised except by a motion filed in accordance with Rule 16. Rule 16.1(b) requires that such motion be made no later than 20 days prior to trial. A motion not timely filed under the rule is precluded. Rule 16.1(c), Arizona Rules of

Criminal Procedure. *State v. Sustaita,* 119 Ariz. 583, 583 P.2d 239 (1978). In denying appellant relief, the court told him that his objection was untimely. We agree. The defect was no subtle one that could not have been noticed by appellant before trial. Since appellant waited until trial to make his motion on the sufficiency of the indictment, the trial court did not err in precluding it.

■ The second issue is whether the court erred in denying appellant's motion for judgment of acquittal, made both at the close of the State's case and at the end of trial. Rule 20, Arizona Rules of Criminal Procedure, requires the court to enter judgment of acquittal if there is no substantial evidence to warrant a conviction. *See State v. Parker,* 113 Ariz. 560, 558 P.2d 905 (1976); *State v. Ortiz,* 115 Ariz. 43, 563 P.2d 298 (App.1977).

Appellant argues that the State failed to prove that he committed the unlawful acts. In defining involuntary manslaughter for the jury the court gave instructions on two unlawful acts:

"The unlawful acts alleged are: 'It is unlawful to take wildlife from a vehicle or automobile nor shall a person shoot from a vehicle or otherwise wantonly or willfully discharge any firearm upon, from, across or into a road'; or

'Migratory birds may only be taken with a shotgun and not a rifle.' "

With respect to the taking of migratory birds with a rifle rather than a shotgun, the evidence is undisputed that a .22 caliber rifle was used by appellant. There is admittedly no proof that he actually managed to kill any bird, migratory or otherwise, with that rifle. The objects at which he was shooting, which he assumed were geese, were in fact nothing more than decoys. However, the definition of "taking" as used in the wildlife statutes is broad enough to include "pursuing, shooting, [and] hunting." *See* A.R.S. § 17–101 A(16). There was substantial evidence that appellant had hunted migratory birds with an unlawful weapon.

With respect to the other unlawful act, appellant argues that he could not have committed a violation of A.R.S. § 17–301 B because the farm road from which he was shooting was not a "road" within the meaning of the definition of A.R.S. § 17–101 A(14). Even if we accept as true the proposition that this was not a "road" in the statutory sense, we believe it is obvious that the statute is also violated by an act of shooting from a vehicle. Moreover, the defense knew, from the arguments of the State made in opposition to the motion for judgment of acquittal as well as from final arguments, that the State was proceeding under this alternative theory for finding a violation of A.R.S. § 17–301 B. As for the evidence supporting this theory, appellant himself told the officers at the scene that he had fired from his vehicle, and he testified at trial that he had fired from the vehicle while sitting on the seat with one foot resting on the ground beside the car and using the door as a rest for the rifle. Thus, there was substantial evidence to show that appellant had committed both of the unlawful acts underlying the charge of involuntary manslaughter, and therefore the court did not err in denying the motion for judgment of acquittal.

The last issue concerns the adequacy of the instructions given to the jury on involuntary manslaughter. The full instruction given by the court was as follows:

"Involuntary manslaughter is an unintentional killing and has two elements. The first element is: The defendant must commit an unlawful act which is inherently dangerous to human life.

"The unlawful acts alleged are: 'It is unlawful to take wildlife from a vehicle or automobile nor shall a person shoot from a vehicle or otherwise wantonly or willfully discharge any firearm upon, from, across or into a road'; or

'Migratory birds may only be taken with a shotgun and not a rifle.'

"The second element is that the defendant's unlawful act must cause the victim's death."

Appellant's first objection to these instructions is that they do not inform the jury that the State had to prove a causal connection between the unlawful act and the resulting death. The instructions very clearly state that the defendant's unlawful act must cause the victim's death. Appellant's objection on this ground is not well taken.

Appellant's second objection to the instruction as given is that it did not distinguish from the jury between an unlawful act *malum in se* and an unlawful act *malum prohibitum,* the argument being that the latter is insufficient to satisfy the unlawful act element of involuntary manslaughter. Appellant directs us to no Arizona case making such a distinction and we have been unable to find one. Appellant relies upon an annotation in 40 Am.Jur.2d Homicide, § 77. However, the annotation specifically points out that the distinction is made only if the act in question is not inherently dangerous and there is no negligence in its performance. The annotation also notes that in some cases courts have not observed the distinction.

While many early American decisions make the distinction in involuntary manslaughter cases between unlawful acts *mala in se* and those *mala prohibita,* the common law origins of this practice are dubious at best. An excellent law review article on the point traces the origin of the distinction to a statement by Lord Hale in his famous *Pleas of the Crown. See* Wilner, *Unintentional Homicide In The Commission Of an Unlawful Act,* 87 U.Pa.L.Rev. 811, 827 (1939). The author points out there is little evidence that the distinction was universally favored by common law jurists, and notes in particular that Blackstone never mentioned the existence of any such distinction.

Nonetheless, early American courts adopted the distinction and used it widely. Based upon his analysis of the case law, Wilner suggests that the distinction was only a device to enable the courts to avoid difficult issues of causation. What Lord Hale probably meant by making the original distinction is that "an unintended homi-

cide caused by the defendant while he was engaged in the perpetration of a minor unlawful act, does not entail criminal guilt if the circumstances are such that the homicide cannot be said to be the causal result of the *unlawfulness* of the defendant's conduct." Wilner, *supra,* 87 U.Pa.L.Rev. at 830–31. When faced with a factual situation in which it was unclear that the death of the victim was causally related to the unlawful conduct, courts would often resolve the problem by holding that the unlawful act did not suffice to convict for involuntary manslaughter because it was only *malum prohibitum* rather than *malum in se.* Wilner soundly criticizes the distinction, and some American courts that in the past have relied on the doctrine are moving away from it. *See generally State v. Pray,* 378 A.2d 1322 (Me.1977).

As noted above, no Arizona case making the distinction has been found by or cited to this Court. Nor does an examination of the cases in California, from which our involuntary manslaughter statute was derived, *State v. Sorensen,* 104 Ariz. 503, 455 P.2d 981 (1969), reveal that the distinction is made in that jurisdiction. We are not of a mind at this late date to incorporate a distinction of such dubious origins and doubtful validity into our law of involuntary manslaughter.

■ What is essential for present purposes is that the jury was properly instructed on the law of involuntary manslaughter. Although involuntary manslaughter involves an unintentional killing, *State v. Dixon,* 107 Ariz. 415, 489 P.2d 225 (1971), this does not mean that it is a crime of strict liability. *See People v. Stuart,* 47 Cal.2d 167, 302 P.2d 5 (1956); *People v. Penny,* 44 Cal.2d 861, 285 P.2d 926 (1955). Before it can suffice to sustain a conviction for involuntary manslaughter, the unlawful act must be both inherently dangerous to human life or safety and must also satisfy the statutory requirement that "[i]n every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence." *People v. Stuart, supra*; A.R.S. § 13–131. These conditions

were met in this case and were adequately explained to the jury by the instructions given by the court.

The judgment and sentence of the trial court are affirmed.

DONOFRIO and FROEB, JJ., concur.