**Thomas Benjamin TIGER, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. C–91–973.**

Court of Criminal Appeals of Oklahoma.

June 23, 1995.

As Corrected Aug. 15, 1995.

Rehearing Denied Oct. 11, 1995.

### ORDER GRANTING WRIT OF CERTIORARI

On September 9, 1986, the Petitioner, Thomas Benjamin Tiger, was charged by information with First Degree Malice Aforethought Murder in the District Court of Mayes County in Case No. CRF–86–98. On September 12, 1986 the State filed an Amended Information alleging First Degree Felony Murder. From September, 1986 to January 10, 1991 Tiger was incarcerated in Tennessee for a murder he committed in that state. Tiger executed an Agreement on Detainers under the federal Interstate Agreement on Detainers Act.[1] He waived extradition under that Act to stand trial in Mayes County for the murder of Glen Rothenbush.[2]

On January 10, 1991, Tiger was returned to the Mayes County Jail to await trial for the death of Glen Rothenbush. The examining magistrate held preliminary examination on January 17–18, 1991 and ordered Tiger to be bound over for trial. On January 22, 1991 Tiger was brought before the District Court of Mayes County for formal arraignment where he entered a plea of not guilty. At that time the State filed a Second Amended Information. On February 1, 1991, the State filed a Bill of Particulars, alleging two aggravating circumstances: (1) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (2) there existed the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

On February 11, 1991, Tiger announced that he sought to change his plea. Before the jury was sworn, the trial court accepted Tiger's plea of guilty to the Second Amended Information. This blind plea was entered without any recommendation by the State for an appropriate punishment. After an extensive sentencing hearing in which both aggravating and mitigating evidence were presented, the trial court found the existence of the two aggravating circumstances. On August 29, 1991 the trial court sentenced Tiger to die by lethal injection.

On September 12, 1991 the trial court conducted an evidentiary hearing on Tiger's Application to Withdraw Plea of Guilty and Request for Evidentiary Hearing. The trial court denied Tiger's application to withdraw his guilty plea. Tiger has timely filed his Petition for Writ of Certiorari and Mandatory Sentence Review on Imposition of Death Penalty and has perfected his petition for certiorari review of his judgment and sentence.

We address one proposition raised by Tiger that we find to be meritorious.

### THE TRIAL COURT'S SUBJECT MATTER JURISDICTION

In his first proposition of error, Tiger alleges that the Second Amended Information violated his constitutional rights by failing to state facts constituting the elements of the underlying felony in the felony murder information.

1. 18 U.S.C.App. 2, § 1, *et. seq.*

2. 18 U.S.C.App. 2, § 2, art. III(e).

■ A guilty plea waives all nonjurisdictional defects in the information. *Frederick v. State,* 811 P.2d 601, 603 (Okl.Cr.1991). On certiorari review of a guilty plea, our review is limited to two inquiries: (1) whether the guilty plea was made knowingly and voluntarily; and (2) whether the district court accepting the guilty plea had subject matter jurisdiction to accept the plea. *Id.; King v. State,* 553 P.2d 529 (Okl.Cr.1976); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Generally, a trial court's jurisdiction is based upon jurisdiction of parties and jurisdiction of the general subject matter. *Application of Anderson,* 803 P.2d 1160, 1163 (Okl.Cr.1990). An information which does not recite facts to allege every essential element of the crime charged fails to charge a crime, and therefore fails to confer subject matter jurisdiction on the trial court. *Miller v. State,* 827 P.2d 875, 879 (Okl.Cr.1992).

■ The Second Amended Information alleged in its charging language:

... that THOMAS BENJAMIN TIGER on or about the 2nd day of July, A.D. 1986 in Mayes County, State of Oklahoma and within the jurisdiction of this Court, did unlawfully, wilfully and feloniously and without authority of law did effect the death of one GLEN ROTHENBUSH; the said defendant being then and there engaged in committing or attempting to commit the crime of BURGLARY–FIRST DEGREE did kill the said GLEN ROTHENBUSH with a wooden board, causing mortal wounds in the body of the said GLEN ROTHENBUSH, from which mortal wounds the said GLEN ROTHENBUSH did languish and die, contrary to the form of the Statutes in such cases made and provided and against the peace and dignity of the State.

■ The test of the sufficiency of an information has two parts: "essential elements" and "notice." The two-prong test for determining the sufficiency of an information is not whether the information might possibly have been made more certain, but whether (1) it contains every essential element of the offense to be charged, and (2) sufficiently apprises the defendant of what he must be prepared to meet. *Miller v. State,* 827 P.2d 875, 877 (Okl.Cr.1992); *Plotner v. State,* 762 P.2d 936, 940 (Okl.Cr.1988); *Nunley v. State,* 660 P.2d 1052, 1056 (Okl.Cr.1983), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 179 (1983); *Argo v. State,* 88 Okla.Crim. 107, 200 P.2d 449, 451 (1948); *Ex parte Burnett,* 78 Okla.Crim. 147, 145 P.2d 441, 442–443 (1944). Because the information in the present case did not allege all of the essential elements of the underlying felony in what is intended to be a felony murder charge, we find that the trial court lacked subject matter jurisdiction to accept the guilty plea to First Degree Felony Murder. *Pickens v. State,* 885 P.2d 678 (1994); *Allen v. State,* 874 P.2d 60, 65 (Okl.Cr.1994); *Miller v. State,* 827 P.2d 875, 879 (Okl.Cr.1992). Okl. Const. art. II, § 17.

■ The State conceded at oral argument that the information in the present case intended to charge Tiger with First Degree Felony Murder. 21 O.S.1982, § 701.7.B. Essentially, the information alleged that Tiger wilfully killed Glen Rothenbush with a wooden board during the course of a first degree burglary. In order for the taking of human life in the commission of a felony to constitute felony murder, the underlying felony must constitute an independent crime not included within the resulting homicide. *Sullinger v. State,* 675 P.2d 472, 473 (Okl.Cr. 1984); *Tarter v. State,* 359 P.2d 596, 601–602 (Okl.Cr.1961). The elements of the underlying felony are essential elements of felony murder. *See especially* OUJI–CR 430. An information intended to charge a defendant with felony murder *must* recite facts to allege every element of the underlying felony. *Pickens v. State,* 885 P.2d 678 (1994). In the present case, the information does not allege any of the particular facts constituting the elements of First Degree Burglary, the underlying felony in the present case. A criminal information which does not allege all the essential elements of the offense charged is insufficient, and the defect goes to the jurisdiction of the court and is not waivable. *Harjo v. State,* 797 P.2d 338, 342 (Okl.Cr. 1990). Okl. Const. art. II, § 17.

For the foregoing reasons, we grant certiorari and vacate the judgment and sentence of

the trial court. We remand to the trial court for further proceedings consistent with this order.

**IT IS SO ORDERED.**

JOHNSON, P.J., and LANE and STRUBHAR, JJ., concur.

CHAPEL, V.P.J., concurs in result.

LUMPKIN, J., dissents.

LUMPKIN, Judge, dissenting:

Petitioner was initially charged by information on September 9, 1986, and the information was amended on September 12, 1986. The information was amended again January 22, 1991. He entered a guilty plea to that amended information February 11, 1991. He was sentenced to death on August 29, 1991. He sought to withdraw his plea, and the court denied the application on September 12, 1991. Petitioner did not object to or complain of the sufficiency of the information until he appealed to this Court, despite the fact he had over five years to do so.

Because I continue to believe the defect in the information, if any, is not "jurisdictional," and because I believe Petitioner waived the error on appeal, I must dissent to the Order granting certiorari.

I continue to view the Court's action in *Miller v. State,* 827 P.2d 875, 879–883 (Okl. Cr.1992) (Lumpkin, V.P.J., with whom Johnson, J., joins, concurring in part and dissenting in part) as a blatant act of disregard for the plain language of the statutory language enacted by the Oklahoma Legislature. I shall not repeat the cases cited there in support of my position. Rather, I here present additional authority to show that, whatever error may be present in the allegations pled in Petitioner's information, that error is not "jurisdictional" in the sense the word is commonly used regarding the subject matter jurisdiction of the district court. Further, because it is not jurisdictional, it can be—and was here—waived for consideration on appeal upon Petitioner's entering a knowing and voluntary plea of guilty to the charge.

### I.

We must presume the Legislature had a reason for placing as it did the statutes in Title 22 governing pre-trial and trial procedure. The Legislature did not intend the notice provisions of Sections 401–413 of Title 22 to be jurisdictional; if it had, it would have included them in the general provisions of Chapter 4 of Title 22, where subscription, endorsement and verification of the information are required. *See* Sections 301–304 of Title 22. Since it did not, it seems clear the Legislature intended them to have a different significance than the provisions which invoke the jurisdiction of the district court.[1]

Nor can there be a serious argument the district courts of this State do not have jurisdiction when an otherwise properly endorsed information is filed. The district courts of this State are successors "to the jurisdiction of all other courts" which earlier had jurisdiction of original proceedings "in civil matters and proceedings for the violation of state statutes." 20 O.S.1991, § 91.1. In short, the district courts have jurisdiction because our laws *say* they do.

The earlier cases cited in *Miller* do not contradict that. Even in situations where this Court reversed, there was no mention

---

1. In addition, the provisions of Sections 251–269 of Title 22 provide the procedure in Oklahoma which must be utilized to initiate criminal charges in the district court. Unlike the federal system, where a defendant is not afforded an opportunity to know and understand the charges against him except for the allegations in the indictment, a person charged with a felony in Oklahoma is first given notice of the allegations by the information filed in the case and then through the evidence presented at the preliminary hearing. Before the person charged can be held to answer for the offense, the magistrate must find the evidence shows a crime was committed and sufficient cause to believe the person charged committed it. In other words, evidence of each element of the offense must have been presented to the magistrate in a hearing where the person charged has a right to be present and an opportunity to cross-examine witnesses and present evidence before that person can be required to enter a plea to the charge. *See State v. Berry,* 799 P.2d 1131, 1133 (Okl.Cr.1990). In effect, the Oklahoma procedure requires the State to prove the jurisdiction of the court before a person charged can be required to defend against the charges.

that failure to list all the elements of a crime in the information constituted a jurisdictional defect which deprived the trial court of its jurisdiction. *See, e.g., Fletcher v. State,* 2 Okl.Cr. 300, 101 P. 599 (1909); *Stout v. Territory,* 2 Okl.Cr. 500, 103 P. 375 (1909); *Abrams v. State,* 13 Okl.Cr. 11, 161 P. 331 (1916). Rather, the language invoking "jurisdiction" appeared from a vacuum, with no support in either the law or common sense.

## II.

### A.

This view is one shared by the United States Supreme Court and can be seen in cases as early as *Coffey v. United States,* 116 U.S. 436, 442, 6 S.Ct. 437, 440, 29 L.Ed. 684 (1886). There, a defendant raised, among other complaints, that the information was not sufficient and the court did not therefore have subject matter jurisdiction. The Court first deemed the complaint waived, as it was not "formally raised in the circuit court, and [was] not presented by a bill of exceptions, and cannot be considered here." *Id.,* 116 U.S. at 442, 6 S.Ct. at 440.

This presents two important points. One is that the complaint was waived for review because the defendant answered the information, and therefore must have known of its specifics. That is discussed in more detail in part IV, below. Of more importance to this immediate discussion is the basic fact the Court considered the complaint waived. This impliedly answers the question whether a defect in an information which does not contain the specificity required is jurisdictional: *were the complaint jurisdictional, the Court would have considered it even though it had been waived below.*

Nor is this idea one lost over the decades. In *Russell v. United States,* 369 U.S. 749, 752–53, 82 S.Ct. 1038, 1041, 8 L.Ed.2d 240 (1962), the Court addressed (and reversed based on) a proposition an indictment failed to inform a defendant as to the nature of his crime with required specificity. Before reaching the merits, the Court noted that "[i]n each case the issue thus raised was *preserved on appeal,* in the petition for writ of certiorari, and in brief and argument here."

### B.

But we need not simply infer that an information which is not specific enough is not jurisdictional. In *United States v. Williams,* 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951), four people were indicted for perjury based on testimony at an earlier conspiracy trial which was ultimately decided on appeal to be based on a defective indictment. The Court held that where the faulty indictment was based on a federal statute, the federal district court had jurisdiction of the subject matter; and that the false testimony before it under oath was perjury, notwithstanding that it was ultimately determined on appeal that indictment was defective. *Id.* at 65–66, 71 S.Ct. at 599. In reaching its decision, the Court noted that jurisdiction "is the power to decide a justiciable controversy, and includes questions of law as well as of fact." *Id.* at 66, 71 S.Ct. at 599 (quoting *Binderup v. Pathe Exchange,* 263 U.S. 291, 305, 44 S.Ct. 96, 98, 68 L.Ed. 308 (1923)). However, "[e]ven the unconstitutionality of the statute under which the proceeding is brought does not oust a court of jurisdiction." *Id.*[2]

It is true that "[t]he line is narrow and often wavering between errors in the proceedings and lack of jurisdiction." *Id.* However, as the *Williams* Court made plain, where the court is "empowered to take cogni-

---

2. I do not intend to mislead anyone. There are obviously instances where certain essential facts may be lacking; in that case, the court would have no power to act. *Id.* at 66, 71 S.Ct. at 600 (citing *Noble v. Union River Logging R. Co.,* 147 U.S. 165, 173, 13 S.Ct. 271, 273, 37 L.Ed. 123. However, as the Court said, the existence of those facts are so plainly necessary, that appellate examples are rare. *Id.* As the discussion below shows, this is not one of those instances. As the Court in *Binderup v. Pathe Exchange,* 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308 (1923) noted, "[j]urisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit." *Pathe,* 263 U.S. at 305–06, 44 S.Ct. at 98. As discussed in footnote 1, the Oklahoma procedure affords a person charged with greater protections against this potential than the federal procedure.

zance of the crime ... and decide the issues under that statute," *Id.*, the problem lies not with the jurisdiction of the court, but in another area.

This view was also set forth in *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26–27, 63 S.Ct. 938, 942, 87 L.Ed. 1185 (1943), where the Court observed in determining whether an extraordinary writ should issue:

> [T]he present case involves no question of the jurisdiction of the district court. Its jurisdiction of the persons of the defendants, and of the subject matter charged by the indictment, is not questioned.... Here the indictment was returned by the requisite number of duly qualified grand jurors, acting under order of the court continuing the grand jury in session. The objection that the subject matter of the indictment was not one which the jury had been or could be continued to hear was at most an irregularity which, if the proper subject of a plea in abatement, did not affect the jurisdiction of the court.
>
> Nor does this case involve a refusal by the district court to adjudicate issues properly presented to it, ... In sustaining the Government's demurrers to the pleas and its motions to strike, the district court did not, as the court below seemed to think, refuse to act on the pleas. Instead, it held that they were insufficient in law to abate the criminal prosecution. In thus ruling on questions of law decisive of the issue presented by the pleas and replications the district court acted within its jurisdiction as a federal court to decide issues properly brought before it. Its decision, even if erroneous—a question on which we do not pass—involved no abuse of judicial power, and any error which it may have committed is reviewable by the circuit court of appeals upon appeal appropriately taken from a final judgment and by this Court by writ of certiorari.

*Roche,* 319 U.S. at 26–27, 63 S.Ct. at 942 (citations omitted). *See also Goto v. Lane,* 265 U.S. 393, 402, 44 S.Ct. 525, 527, 68 L.Ed. 1070 (1924) [3]; *In re Eckart,* 166 U.S. 481, 482–83, 484–85, 17 S.Ct. 638, 638–39, 41 L.Ed. 1085 (1897).[4]

In summary, even if an information does not contain the specificity required by law,

---

**3.** Where the Court said:

> The circuit court in which the petitioners were tried and convicted undoubtedly had jurisdiction of the subject-matter and of their persons, and the sentence imposed was not in excess of its power. The offense charged was neither colorless nor an impossible one under the law. The construction to be put on the indictment, its sufficiency and the effect to be given to the stipulation were all matters the determination of which rested primarily with that court. If it erred in determining them, its judgment was not for that reason void ..., but subject to correction in regular course on writ of error. If the questions presented involved the application of constitutional principles, that alone did not alter the rule.

**4.** Involving a complaint by petitioner that he was convicted of murder without knowing the degree of murder for which he was convicted, and therefore, the court had no jurisdiction to sentence him. The Court, after noting the trial court had jurisdiction and noting that any error committed was "in the exercise of jurisdiction, and one which does not present a jurisdictional defect," noted:

> The case is analogous in principle to that of a trial and conviction upon an indictment, the facts averred in which are asserted to be insufficient to constitute an offense against the statute claimed to have been violated. In this class of cases it has been held that a trial court possessing general jurisdiction of the class of offenses within which is embraced the crime sought to be set forth in the indictment is possessed of authority to determine the sufficiency of an indictment, and, in adjudging it to be valid and sufficient, acts within its jurisdiction, and a conviction and judgment thereunder cannot be questioned on habeas corpus, because of a lack of certainty or other defect in the statement in the indictment of the facts averred to constitute a crime....
>
> ....
>
> The same principle would apply to a plea of a former conviction. Clearly, in these cases the court not only has jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial, it is error which may be corrected by the usual modes of correcting such errors; but that the court had jurisdiction to decide upon the matter raised by the plea, both as matter of law and of fact, cannot be doubted. * * * It may be confessed that it is not always very easy to determine what matters go to the jurisdiction of a court, so as to make its action, when erroneous, a nullity. But the general rule is that when the court has jurisdiction by law of the offense charged, and of the party who is so charged, its judgments are not nullities.

that in and of itself does not go to the jurisdiction of the court. Whether it poses a Due Process problem, *see, e.g. Twining v. New Jersey,* 211 U.S. 78, 112, 29 S.Ct. 14, 25, 53 L.Ed. 97 (1908); *Davis v. Burke,* 179 U.S. 399, 403–04, 21 S.Ct. 210, 212, 45 L.Ed. 249 (1900); *Caldwell v. Texas,* 137 U.S. 692, 696, 11 S.Ct. 224, 226, 34 L.Ed. 816 (1891), is an issue resolved on the facts of the individual case.

## III.

This should conclusively prove *Miller* and its ilk are incorrect in labeling the error complained of here as jurisdictional. To have an information so severely lacking that it fails to state an offense is one thing; to have one that clearly states an offense but which does not contain the specificity a defendant would like is entirely something else. To that end, I would overrule the broad language in those cases as being inconsistent both with legal precedent and common sense. As the discussion below shows, I would also hold the complaint was waived for appeal.

## IV.

### A.

This is not simply an issue of semantic labeling. As this Order notes, subject-matter jurisdiction can be raised at any time; if this is not an issue involving subject-matter jurisdiction, the issue can be waived. The above discussion shows this does not involve subject-matter jurisdiction. The question then becomes whether it can be waived. I believe it can.

In *Coffey,* above, a defendant raised, among other complaints, that the information was not sufficient and the court did not therefore have subject matter jurisdiction. The Court first deemed the complaint waived, as the complaint was not "formally raised in the circuit court, and are not presented by a bill of exceptions, and cannot be considered here." *Id.,* 116 U.S. at 442, 6 S.Ct. at 440. It then added:

Assuming, however, that the point as to the information can be raised here, it is urged that the first count, that founded on section 3257, is insufficient because the count does not set forth facts from which the court can infer that Coffey defrauded, or attempted to defraud, the United States. It is a sufficient answer to this objection to say that the claimant in his answer denies the allegations of the first count specifically, as they are made. After that, he cannot, in a court of error, on such a record as this, be heard to say that he did not know the charge made, and could not defend against it, although, if he had excepted or demurred to the count, the objection might have been presented for consideration.

*Id.* The same was true in *Ex parte Converse,* 137 U.S. 624, 630–31, 11 S.Ct. 191, 193, 34 L.Ed. 796 (1891). There, in a habeas complaint that the charging information did not allege an element of the crime to which he pled guilty, the Court noted the defendant had pled guilty to the crime of embezzlement when arraigned. This was important, because "he pleaded guilty of embezzlement, and undoubtedly understood when he made his plea that he was pleading guilty to the felony charged." This observation "was fortified by the private examination required by statute to be made by the judge before sentencing upon a plea of guilty." *Id.,* 137 U.S. at 630–31, 11 S.Ct. at 193. The Court therefore found no error on which to grant habeas relief.

### B.

Other courts have been even more straightforward in labeling a complaint waived if it was not objected to below. In *United States v. Pheaster,* 544 F.2d 353 (9th Cir.1976), a defendant convicted of violating federal kidnapping laws objected on appeal because an indictment failed to allege the element of interstate transport, which made the crime fall under federal jurisdiction. Although the court noted failure of an indictment is a defect which can be raised at any time, it added judicial economy required objections to the indictment be raised at the earliest possible time. If not, untimely objections raised on appeal will not result in reversal "if the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." *Id.* at 361. There is a valid reason for this: "[s]uch

a long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendant." *Id.* Furthermore, the court reasoned, "the fact of the delay tends to negate the possibility of prejudice in the preparation of a defense." *Id. See also United States v. Czeck,* 671 F.2d 1195, 1197 (8th Cir.1982) ("Where the sufficiency of the information is questioned for the first time on appeal, it will be found sufficient unless so defective that by no reasonable construction can it be said to charge the offense for which the defendants were convicted"; it is sufficient if it clearly states "all the essential elements 'of substance' with the offense.").

At least three state courts have reached similar conclusions. *See State v. Puryear,* 121 Ariz. 359, 590 P.2d 475, 478 (1979) (Court refused to reverse conviction because defect not subtle, no pre-trial motions were directed against the indictment, and defendant had actual notice of the underlying crime); *Selley v. State,* 403 So.2d 427, 428 (Fla.App.1980) (even though charging information did not state battery was "against the will of the victim," conviction would not be reversed because motion to dismiss defective information was not "specifically directed to the alleged defect"; such an omission is waived "unless the information wholly fails to charge a crime." Additionally, the judge instructed the jury on the omitted language.); *State v. Fields,* 390 So.2d 128, 131, 132 (Fla.App.1980) (State appeal based on trial court's order arresting judgment because information for burglary did not specify the crime which was intended to be committed; appeals court reverses but applies lesser degree of scrutiny, observing it would be "anachronistic" to label every pleading error as fundamental or fatal); *State v. Batson,* 35 Or.App. 175, 580 P.2d 1066, 1067 (1978) (Indictment for attempted burglary did not specify crime intended to be committed once breaking and entering completed; because defendant did not object to the indictment below, he could not raise it on appeal.).

## V.

Here, Petitioner at no time raised an objection to the information charging him with felony murder. There is a good reason for that: it is not lacking. It states Petitioner killed his victim while engaged in the crime of first degree burglary. The Court would reverse, not based on lack of notice, but because the elements of first degree burglary were not laid out. Here, they need not be.

The applicable statutory provisions state the indictment or information must contain:

1. The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.

2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

22 O.S.1991, § 401.

The indictment or information must be direct and certain as it regards:

1. The party charged.

2. The offense charged.

3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense.

22 O.S.1991, § 402.

The words used in an indictment or information must be construed in their usual acceptation, in common language, except words and phrases defined by law, which are to be construed according to their legal meaning.

22 O.S.1991, § 407.

*No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits.* (Emphasis added)

22 O.S.1991, § 410.

This Court long ago held that the common-law doctrine of strict construction of criminal laws and proceedings has been abrogated by statutes, which are liberally and not technically construed. *Burks v. State,* 64 Okl.Cr. 285, 79 P.2d 619 (1938); *Williams v. State,* 14 Okl.Cr. 100, 167 P. 763 (1917). The purpose

of statutes relating to sufficiency of indictments and informations was to eliminate immaterial matters from trials and to repeal common-law doctrine that a penal statute should be strictly construed, and such statutes established the equitable doctrine of liberal construction. "These statutes have a special application to indictments and informations. It does away with the strict construction once placed on those pleadings, and makes them sufficient if a person of ordinary understanding can know what was intended by the terms used. They place upon the courts the duty to hold them sufficient unless they are so defective as to prejudice the rights of the defendant upon the merits of his case." *Clark v. State*, 63 Okl.Cr. 138, 145, 73 P.2d 481, 484 (1937). Furthermore, a strict statutory definition of a public offense is not necessary in an information. *Fulkerson v. State*, 17 Okl.Cr. 103, 189 P. 1092 (1920).

The allegations in the information are plain: Petitioner, while engaged in the act of First Degree Burglary, killed his victim with a wooden board. This seems clear to me; it certainly seemed clear to Petitioner, who pled guilty to the offense and gave a sufficient factual basis for his crime. It was not necessary to list the elements of the underlying felony. *Cf. Thornton v. United States*, 271 U.S. 414, 423, 46 S.Ct. 585, 588, 70 L.Ed. 1013 (1926) (in charge of conspiracy, "the rules of criminal pleading to not require the same degree of detail in an indictment for conspiracy in stating the object of the conspiracy, as if it were one charging the substantive offense.").

While I certainly agree it would have provided more notice of the State's allegations to the Petitioner to list the elements of first degree burglary, failure to do so here is not fatal, especially when Petitioner waived any right to complain about the information by entering a knowing and voluntary plea of guilty to it. This is consistent with our application of waiver of the Constitutional rights to Counsel and jury trial. To hold otherwise would be to adhere to the untenable position that while a person is presumed to know the law, that knowledge evaporates when he is charged with a violation of it. In this case, Appellant had opportunity to object to the sufficiency of the information at preliminary hearing and again at formal arraignment. He failed to raise any objection at any time or complain he was not aware of the nature of the charges filed or that he was unable to defend against those charges. He cannot complain at this late date.

A defendant is presumed innocent; he is not presumed to be so ignorant he cannot comprehend the common meaning of words used every day in the English language. This information states the crime with sufficient clarity to apprise him of the act he is alleged to have committed. It also sufficiently states a violation of state law to confer the court with jurisdiction. Accordingly, it is not fatally defective. I will state once again this Court should not reach back into antiquity and resurrect the bones of Code pleading which should have been laid to rest many decades ago.

I respectfully dissent.